**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SETH J. BRANDT, | : | |
| **Plaintiff** | : | |
| | : | No. 3:13-cv-02165 |
| v. | : | |
| | : | (Judge Kane) |
| CAROLYN W. COLVIN | : | |
| COMMISSIONER | : | |
| OF SOCIAL SECURITY, | : | |
| **Defendant** | : | |

**MEMORANDUM**

Before the Court is Plaintiff Seth J. Brandt's complaint, wherein he requests review of the Social Security Commissioner's decision denying him disability insurance benefits and supplemental security income payments.  (Doc. No. 1.)  The motion has been briefed, and on June 24, 2014, the Court heard oral argument on Plaintiff's complaint.  For the reasons that follow, the Court will affirm the Commissioner's decision.

I.     **BACKGROUND**

On December 2, 2010, Plaintiff[1] protectively filed a Title II application for disability and disability insurance benefits, and a Title XVI application for supplemental security income.  (Doc. Nos. 1, 17.)  Both claims were denied on January 28, 2011, and Plaintiff subsequently filed a request for a hearing.  On April 3, 2012, a hearing on Plaintiff's claims convened before Administrative Law Judge ("ALJ") Randy Riley.  (Doc. No. 11-2 at 27.)  On May 2, 2012, the ALJ issued a decision denying Plaintiff's claim.  (Id. at 12-20.)  Plaintiff then filed a request for review with the Appeals Council; on June 14, 2013, the Appeals Council denied the request for

---

[1]  Plaintiff's date of birth is January 7, 1981.  (See Doc. No. 11-5 at 2.)

1

review.  The ALJ's decision of May 2, 2012, is thus the final decision of the Commissioner and the Social Security Administration.  (Doc. No. 1 ¶ 3).

On August 15, 2013, Plaintiff filed a complaint in this Court appealing the Commissioner's decision.  (Doc. No. 1.)  Plaintiff argues that the ALJ erred by: (1) failing to give appropriate weight to the opinions of Plaintiff's treating physicians, (2) finding the Plaintiff and his witnesses not credible and failing to address the testimony of Plaintiff's mother regarding his limitations and functioning problems, and (3) failing to fully develop the record.  (Doc. No. 17.)

## II.   STANDARD OF REVIEW

A trial court has plenary review of all legal issues decided by the Commissioner.  Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007).  The trial court's review of any findings of fact, however, is limited to whether those findings are supported by "substantial evidence."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  The substantial evidence standard is highly deferential, and is satisfied with "more than a mere scintilla" of evidence.  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (internal citation omitted).  "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence "does not mean a large or considerable amount of evidence," but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quotation omitted).  Substantial evidence exists only "in relationship to all the other evidence in the record," see Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and therefore a court reviewing the Commissioner's decision

must scrutinize the record as a whole, including whether the Commissioner adequately

developed the record.  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

To receive disability benefits, a plaintiff must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medical determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.  For purposes of the preceding
> sentence (with respect to any individual), "work which exists in the national
> economy" means work which exists in significant numbers either in the region
> where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process when evaluating disability insurance

claims.  20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92.  This process requires the

Commissioner to consider, in sequence, whether a claimant, first, is engaging in substantial

gainful activity; second, has an impairment that is severe or a combination of impairments that is

severe; third, has an impairment or combination of impairments that meets or equals the

requirements of a listed impairment; fourth, has the residual functional capacity to return to his

or her past work; and, if not, fifth, whether he or she can perform other work in the national or

regional economy.  Id.  For the purposes of this determination, residual functional capacity is the

individual's maximum remaining ability to do sustained work activities in an ordinary work

setting on a regular and continuing basis.  See Titles II and XVI: Assessing Residual Functional

Capacity in Initial Claims, 61 Fed. Reg. 34475 (July 2, 1996).  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id.; 20 C.F.R. § 404.1545; see Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (noting that residual functional capacity is "defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

## III.  DISCUSSION

At the first step of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 2, 2010, the alleged onset date. (Doc. No. 11-2 at 14.)  At step two, the ALJ found that Plaintiff has the severe impairments of obstructive sleep apnea, headaches, and depression.  (Id. (citing 20 CFR 404.1520© and 416.920©.)  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404.  (Id.)  At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work with the following limitations:

> [Plaintiff's] work is limited to simple, routine repetitive tasks in a work environment free from fast paced production. [Plaintiff] is limited to only simple work related decisions with few, if any, work place changes.  He should have no interaction with the public. [Plaintiff] is limited to occasional interaction with co-workers but he should never perform tandem tasks.  Moreover, [Plaintiff] is limited to work that involves only occasional supervision.

(Id. at 16.)  The ALJ further concluded that given these limitations, Plaintiff was unable to perform any past relevant work.  (Id. at 18.)  Finally, at step five, the ALJ determined that, upon consideration of Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Id. at 19.)  Thus, the ALJ concluded that Plaintiff was not disabled, as defined in the

4

Social Security Act.  (Id. at 20.)

Plaintiff objects to the ALJ's findings on three grounds: (1) the ALJ failed to give appropriate weight to the opinions of Plaintiff's treating physicians, (2) the ALJ erred in finding the Plaintiff and his grandmother not credible, and in completely failing to address the testimony of Plaintiff's mother, and (3) the ALJ failed to fulfill his duty to fully develop the record.  The Court will address each argument in turn.

### A.     Failed to give appropriate weight to treating physicians' opinions

Plaintiff argues that the various treating physicians who examined Plaintiff were consistent in noting Plaintiff's slow mentation, depression and anxiety, and they all concluded that Plaintiff had significant problems functioning and relating to others.  (Doc. No. 17 at 7-8.) Plaintiff asserts that it was therefore error in light of such evidence for the ALJ to conclude that Plaintiff was not disabled.  (Id.)  Defendant contends that the record as a whole supports the ALJ's conclusions and that the ALJ appropriately weighed the medical opinions of record. (Doc. No. 18 at 12.)

Generally, a treating physician's opinion is given more weight than that of non-treating sources.  20 CFR § 404.1527©.  Where a treating physician's opinion is inconsistent with the record as a whole, the ALJ may accord less weight to the opinion of that physician, so long as the ALJ's conclusion is supported by substantial evidence.  See Plummer, 186 F.3d at 429.

The Court finds that the ALJ did not fail to give proper weight to the opinions of treating physicians.  In support of his contention that the ALJ failed to give proper weight to the opinions of treating physicians, Plaintiff gathers statements from various treating physicians and makes the argument that "it is clear that the Plaintiff has had an ongoing psychological impairment

which is highly likely to preclude sustaining any work activity."[2]  (See Doc. No. 14.)   However,

contrary to Plaintiff's position, it appears that the ALJ specifically noted and considered the

opinions of the treating physicians while also noting contrary evidence in the record, justifying

his conclusion that Plaintiff was not disabled.  For example, while the ALJ specifically noted

that Dr. Mosser, a treating neurologist, concluded that the Plaintiff had slow mentation and spells

of confusion, the ALJ also noted Dr. Mosser's observations that Plaintiff's headaches were never

bad enough to cause him to miss work and that his neurological exam was normal.  (Doc. No.

11-2 at 17.)  Similarly, the ALJ noted that Dr. De La Cruz, a treating psychologist, diagnosed

Plaintiff with depression, but the ALJ also noted evidence that the Plaintiff spends a lot of time

on the computer, has friends, and additionally that there was "some question regarding

[Plaintiff's] seriousness in addressing his depression."  (Id.)  The ALJ further noted Dr. De La

Cruz's observation that "the [Plaintiff] has organized thinking and no psychotic symptoms."

(Id.)  Thus, considering the record as a whole, it appears that the ALJ properly took into account

the many different medical opinions in the record when he concluded that Plaintiff's ailments

have not caused "more than a minimal limitation in [his] ability to work," and the Court finds

there was substantial evidence for this determination based on the record evidence, including the

opinions of treating physicians.  See Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983)

(quoting Richardson v. Perales, 402 U.S. 389 (1971)) ("The Supreme Court has defined

---

[2] For example, Plaintiff cites Dr. Mosser, who noted the Plaintiff had headaches and slow
mentation.  (Doc. No. 17 at 6.)  He also cites Dr. Cherry, who "diagnosed [Plaintiff with] a
'functional'" disorder related to anxiety and depression," and Dr. Qazizadeh, who "noted
[Plaintiff's] psychomotor retardation and slowness which was probably a result of a generalized
psychiatric condition and the effect of his medications."  (Id.)  He further notes that Dr. De La
Cruz and Dr. Hume both diagnosed Plaintiff with Major Depression Disorder.  (Id. at 6-7.)

substantial evidence as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

Additionally, although Plaintiff argues the ALJ failed to give controlling weight to the various treating physician opinions, Plaintiff points to no specific work related limitation given by any treating physician that the ALJ disregarded, and the Court does not find any such specific limitations in the record.  Plaintiff essentially asks to Court to re-weigh the record evidence, which it will not do; the ALJ acts as fact-finder in making the disability determination.  See Plummer, 186 F.3d at 427 ("The substantial evidence standard is highly deferential, and is satisfied with 'more than a mere scintilla' of evidence.").

Moreover, the Court observes that the ALJ ultimately concluded that there were limitations on the work Plaintiff could do, reinforcing that the ALJ did not, as Plaintiff suggests, disregard the opinions of treating physicians in rendering his decision.  Specifically, the ALJ concluded that Plaintiff's residual functional capacity limited him to light work with specific restrictions (see Doc. No. 11-2 at 16) and, further, that in light of these restrictions he is unable to perform his past relevant work (see id. at 18).  Thus, it appears that the ALJ did consider and incorporate the opinions of treating physicians as to Plaintiff's medical problems, such as Plaintiff's depression.  Nevertheless, despite these limitations and finding that he was accordingly unable to perform his past relevant work, the ALJ ultimately concluded that, given Plaintiff's residual functional capacity, there were other jobs that existed in the national economy that Plaintiff could do and he was therefore not under a disability as defined in the Social Security Act.  (See id. at 19-20.)  The Court finds no error necessitating remand based on the ALJ's treatment of the various medical opinions of record.  See Schwartz v. Halter, 134 F. Supp.

2d 640, 650-51 (E.D. Pa. 2001) (citing C.F.R. § 404.1527(e)) ("Opinions from a claimant's treating physicians are important in evaluating a claimant's residual function capacity; however, the final responsibility for determining residual functional capacity is reserved to the Commissioner.").  Accordingly, the Court will affirm the decision of the Commissioner on this basis.

Plaintiff also appears to object to the weight the ALJ afforded the opinions of Dr. Sadar, a non-treating state agency psychiatrist, and to the Global Assessment of Functioning ("GAF") scores provided by treating psychiatrists at the Pennsylvania Psychiatric Institute.  (Doc. No. 17 at 9.)  The Court finds no error in the ALJ's determination. The ALJ noted that he afforded "great weight" to Dr. Sadar's residual functional capacity determination, in which Dr. Sadar indicated that Plaintiff had "no worse than moderate limitations."  (Doc. No. 11-2 at 17.)  The ALJ found that such a determination was consistent both with the record as a whole and, specifically, with the Plaintiff's Global Assessment of Functioning ("GAF") Scores in the 50s.[3] (Id.)  Where appropriate, the ALJ may rely on the opinion of a non-treating, state agency physician.  See Borino v. Astrue, No. 10-2135, 2012 WL 1604880, at *14 (M.D. Pa. May 8, 2012) (citing Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)).

However, Plaintiff argues that "consideration of a Global Assessment of Functioning Scores as a measure of the Plaintiff's ability to perform work activity is inappropriate given that

---

[3] A GAF score of 51-60 indicates moderate symptoms, or "moderate difficulties in social, occupational, or school functioning."  See Doc. No. 18 (citing American Psychiatric Association – Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 34 (4th ed. rev. 2000)).  By contrast, a score between 41-50 indicates that the patient has serious symptoms or "serious impairment in social occupational, or school functioning."  See id.; see also Gilroy, 351 Fed. Appx. at 715.

the score on a particular day is only a snapshot of the person's functional ability at that time."

(Doc. No. 17 at 9-10.)  Although its true that GAF scores do not directly correlate to the severity

requirements in a disability determination, see Gilroy v. Astrue, 351 Fed. Appx. 714, 715 (3d

Cir. 2009), the Court finds no support for the proposition that the ALJ could not consider GAF

scores as supportive of the findings of Dr. Sadar.  In sum, the Court finds there was substantial

evidence to support the weight the ALJ afforded to Dr. Sadar's opinion, and the Court will

affirm the decision of the Commissioner on this basis as well.

**B.      Failed to properly evaluate the credibility of Plaintiff and his witnesses, and failed to address the testimony of Plaintiff's mother**

Plaintiff argues that the ALJ erred in finding Plaintiff and his witnesses not credible, and

in so doing, failed to consider Plaintiff's functional limitations when determining Plaintiff's

residual functional capacity.  (Doc. No. 17 at 14.)  Plaintiff also contends that the ALJ erred in

failing to address the testimony of the Plaintiff's mother in rendering his decision.  (Id.)

The ALJ "must give serious consideration to a claimant's subjective complaints of pain . .

. even where those complaints are not supported by objective evidence."  Mason v. Shalala, 994

F.2d 1058, 1067-68 (3d Cir. 1993).  In making a credibility determination, the ALJ must

evaluate "the extent to which [a claimant's] symptoms can reasonably be accepted as consistent

with the objective medical evidence and other evidence."  Prokopick v. Comm'r of Soc. Sec.,

272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  An ALJ is permitted to

reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing

so.  Id. (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999); S.S.R. 96-

7p, 1996 WL 374186).

The Court finds that the ALJ did not err in determining that Plaintiff and his

grandmother's testimony were not credible.[4]  After stating that he did not find Plaintiff or his

grandmother credible, the ALJ identified contrary evidence in the record that undermined the

Plaintiff's subjective complaints, including: normal pulmonary testing; statements from Dr.

Mosser, treating neurologist, that Plaintiff's neurological exam was normal and that his

headaches were never bad enough to miss work; Plaintiff's testimony that he is on the computer

frequently and has friends, and evidence that Plaintiff was not compliant with his anti-depressant

medication.  (Doc. No. 11-2 at 17.)  In determining Plaintiff's residual functional capacity, the

ALJ also noted that Dr. Qazizadeth, a treating neurologist, indicated that Plaintiff "has a good

attention span and concentration."  (Id. at 15.)  In light of the ALJs specific assessment of the

record, the Court finds that he adequately set forth "sufficient reasons" for finding Plaintiff and

his grandmother not credible.[5]  See Prokopick v. Comm'r of Soc. Sec., 272 F. App'x 196, 199 (3d

Cir. 2008) ("[T]he ALJ considered [the plaintiff's] subjective complaints together with the entire

---

[4] Specifically, the ALJ stated that after "careful consideration of the evidence . . . the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment."  (Doc. No. 11-2 at 17.)  The ALJ also found that the statements provided by Plaintiff's grandmother "essentially mirror the [Plaintiff's] statements" and that he accordingly did "not find the [Plaintiff] or the [Plaintiff's] grandmother to be fully credible."  (Id. at 18.)

[5] Plaintiff also argues that the ALJ erred in "focusing on the abilities of the Plaintiff and not discussing his limitations."  (Doc. No. 17 at 14.)  In making this argument, Plaintiff relies specifically on the testimony of Plaintiff's grandmother that "there are periods he is not coherent, anxiety attacks with complete loss of function when stressed physically or emotionally" and testimony from Plaintiff and his mother about problems Plaintiff had while working at Giant Supermarkets; essentially, Plaintiff asserts the ALJ erred in not giving this testimony more weight and explicitly incorporating these periods of Plaintiff's instability into the residual functional capacity determination.  (Id. at 14-16.)  However, as discussed above, the ALJ properly found Plaintiff and his grandmother's testimony not credible, and accordingly the Court rejects Plaintiff's argument that the ALJ erred when his residual functional capacity determination did not account for these alleged limitations.

record . . . The ALJ sufficiently explained his reasons for finding [the plaintiff's] complaints of pain overstated, and . . . that conclusion is supported by substantial evidence.").

Additionally, Plaintiff argues that the ALJ erred by failing to address in his opinion the testimony of Plaintiff's mother regarding Plaintiff's limitations and functioning problems.  (Doc. No. 17 at 16.)  However, in this Circuit, "many courts have found that an ALJ's failure to address lay opinion testimony, although technically in violation of applicable legal standards, [does] not require remand since the testimony would not have changed the outcome of the case." Butterfield v. Astrue, No. 06-0603, 2011 WL 1740121, at *6 (E.D. Pa. May 5, 2011) (collecting cases).  This is particularly true where the lay testimony the ALJ failed to address was cumulative of other evidence in the record.  See, e.g., Dolbow v. Astrue, 799 F. Supp. 2d 319, 330 (D. Del. 2011); Bailey v. Astrue, No. 07-4595, 2009 WL 577455, at *11 (E.D. Pa. Mar. 4, 2009); Carnes v. Comm'r of Soc. Sec., No. 08-99, 2008 WL 4810771, at *5 (W.D. Pa. Nov. 4, 2008).

Here, the Court agrees with Defendant that the testimony of Plaintiff's mother regarding Plaintiff's difficulties and the problems he encountered while working at Giant (see Doc. No. 11-2 at 44-50), are essentially cumulative of both Plaintiff's testimony and the statements by Plaintiff's grandmother, both of whose testimony the ALJ specifically found was not entirely credible.  Accordingly, because Plaintiff's mother's testimony is cumulative of testimony the ALJ found was not credible, and because the Court found that the ALJs decision was supported by substantial evidence in all other regards, the Court also finds that the cumulative testimony of Plaintiff's mother would not have changed the outcome and will therefore not remand on the

basis that the ALJ failed to address her testimony.  <u>See</u> <u>Carnes</u>, 2008 WL 4810771.[6]

###   C.      Failed to fully develop the record

Plaintiff also argues that the ALJ erred in failing to fully develop the record.

Specifically, Plaintiff contends that the ALJ must make a reasonable effort to obtain evidence

regarding mental impairments, which may include arranging a consultative examination at the

Social Security Administration's expense.  (Doc. No. 17 at 11.)  Plaintiff asserts that the record

was lacking in a "neuropsychological test designed to specifically identify the Plaintiff's

impairments" and that the ALJ had a duty to develop the record by obtaining this type of testing.

(Doc. No. 17 at 12.)

The Court finds Plaintiff's contentions without merit.  First, although Plaintiff is correct

that the ALJ generally has a duty to develop a full and fair record in social security cases, <u>see</u>

<u>Ventura v. Shalala</u>, 55 F.3d 900, 902 (3d Cir. 1995), this duty is most acute in cases in which the

litigant seeking disability benefits is <u>pro se</u>.[7]  <u>See</u> <u>Mayes v. Soc. Sec. Admin.</u>, 190 F. App'x 183,

186 (3d Cir. 2006) ("An ALJ has a heightened duty to develop the record when a claimant is <u>pro</u>

<u>se</u>."); <u>Reefer v. Barnhart</u>, 326 F.3d 376, 380 (3d Cir. 2003).  Here, however, the Plaintiff was

---

[6] "The testimony of Plaintiff's mother was essentially cumulative to Plaintiff's testimony and further discussion of her testimony would not have changed the outcome.  As discussed in the previous section of this opinion, the decision to deny Plaintiff's application for SSI was supported by substantial evidence, including objective medical evidence and information provided by Plaintiff's treating and examining sources.  Under the circumstances, a remand for further consideration of the testimony of Plaintiff's mother is not required."  <u>Carnes</u>, 2008 WL 4810771, at *5.

[7] Plaintiff cites <u>Kane v. Heckler</u>,731 F.2d 1216 (5th Cir. 1984), in support of his assertion that the ALJ failed to properly develop the record, but <u>Kane</u> also clearly notes that the duty to develop the record is heightened in those cases where a plaintiff is proceeding <u>pro se</u>.  <u>Id.</u> at 1219.

represented by counsel, and in seeking disability benefits, "the burden is on the Plaintiff to present medical findings that show his or her impairment matches a listing or is equal in severity to a listed impairment." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000). Plaintiff does not assert that he or his counsel sought such specialized testing, or that he brought it to the attention of the ALJ. That the ALJ has a general duty to develop the record does not mean that a Plaintiff – represented by counsel – no longer has the burden of producing evidence to support his claim. Under the circumstances, the Court does not find that the ALJ breached his duty to develop the record.[8]

Additionally, it is true, as Plaintiff contends, that the Social Security Administration "may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on [a plaintiff's] claim." 20 C.F.R. § 404.1519a. However, Plaintiff highlights no specific ambiguity suggesting that the record was vague or lacking and, as discussed in Section A, supra, the Court finds the ALJs decision was supported by substantial evidence. Stated another way, Plaintiff has not established beyond conclusory assertions that the record was insufficient for the

---

[8] Plaintiff also argues that the ALJ "asked only a short series of questions about [Plaintiff's] activities but did not appear to acknowledge the Plaintiff's responses that indicated when he may have difficulty performing activities or took longer than normal." (Doc. No. 17 at 13.) It does not appear to the Court that this constitutes a failure to develop the record. The hearing transcript indicates that the ALJ went through a series of questions about Plaintiff's ability to do everyday tasks, including showering, cooking, and driving. (Doc. No. 11-2 at 29-32.) Plaintiff was further given an opportunity to respond to questions of counsel. (Id. at 31-44.) Thus, although Plaintiff now appears to assert that the ALJ erred in not asking more questions, the Court finds that the ALJ was thorough in questioning Plaintiff and, moreover, Plaintiff had counsel who further questioned Plaintiff regarding his difficulties and thereby provided him additional chance to state his case. The Court thus finds no error by the ALJ related to his questioning of Plaintiff during the hearing.

ALJ to make his determination.  See Phelps v. Colvin, No. 13-6022, 2014 WL 2090017, at *7 (W.D.N.Y. May 19, 2014) (citing 20 CFR 404.1519a(b)(4)) ("The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record.").  Accordingly, the Court will not remand on the basis that the ALJ failed to adequately develop the record.

## IV.    CONCLUSION

For the foregoing reasons, the Court will affirm the decision of the Commissioner.  An order consistent with this memorandum follows.

14